# SUPREME COURT

# SPECIAL TERM REPORTS.

## VOL. 3.  NO. 3.

### WILDER & GORTON vs. BAUMSTAUCK.

Where a defendant in close confinement, executed a bond and warrant of attorney to Plaintiffs to secure the value of the *probable* amount of goods which Defendant confessed he had purloined from Plaintiffs while in their employ, and for which he was then imprisoned by the Plaintiffs on *criminal process*, awaiting his examination—there being no attorney present for Defendant; *held*, that the judgment entered thereon should not be allowed to stand.

*It seems*, that if it had appeared clearly that the Defendant was *fairly indebted* to the Plaintiffs in the sum for which the judgment was confessed, it would not have been set aside.

The validity of the *bond* in such a case may be fairly tested by action; the setting aside the judgment being no bar to the Plaintiffs' remedy in that way.

*September Special Term*, 1847. *Monroe county.—Motion by Defendant to set aside judgment entered on bond and warrant of attorney.*

Mr. WARNER, *for the motion.*

Mr. GILBERT, *opposed.*

WELLES, Justice.—From the affidavits which, in many respects, are flatly contradictory, the following facts are established or may be inferred.

1. That on the 1st of September, 1847, the Defendant was in close confinement in the watch-house in the city of Rochester, awaiting his examination on a charge of having stolen the goods of the Plaintiffs, and that the proceeding against him was in the name of the people on the complaint of the Plaintiffs.

2. That the bond and warrant of attorney in this case were executed by the Defendant while so in close confinement, no one being present with

11

him but one of the Plaintiffs, (at whose suggestion they were executed,) and the attorney of the Plaintiffs.

3. That the Defendant was a foreigner and unacquainted with legal proceedings. That he executed the bond and warrant of attorney by making his mark, and that the warrant of attorney was not read to him although the nature and effect of both were explained, and the condition of the bond read to him.

4. That the consideration of the bond was, a quantity of goods, confessed at the time and in the prison, to have been at various times and in various quantities, taken by the Defendant from the store of the Plaintiffs while the Defendant was in their employment as a porter, and which goods had been converted and disposed of by the Defendant and not accounted for by him.

4. That there was not at the time of executing the bond and warrant of attorney, or at any other time, any stating of accounts between the parties, and the confession of the defendant as to the amount and value of the goods so taken, was in general terms that they would *probably* amount to $250 and *possibly* to $300.

Upon a careful examination of all the facts and statements in the affidavits, I cannot resist the conclusion, that the Defendant was influenced by a hope and expectation that the giving of the bond and warrant of attorney, whatever he might have understood of their legal effect, would either lead to his discharge from imprisonment, or at least secure the favorable consideration and treatment on the part of the Plaintiffs who were his accusers, and by whom his imprisonment had been procured. It is impossible to reconcile his conduct upon any other principle.

It is contended by the Plaintiffs' counsel that the rule, by virtue of which the court will set aside a judgment entered on bond and warrant of attorney, executed by the Defendant while in confinement, &c., applies only to cases where the Defendant is in custody *at the suit of the Plaintiffs*, and does not apply to a case where he is in confinement on criminal process.

The first rule of court on the subject that I have been able to find, was adopted by the English court of King's Bench in the 15th year of Charles II.—and is in the following words: "That no warrant of attorney for confessing a judgment executed by any person in custody, shall be of any force unless some attorney for and on behalf of such person in custody, and expressly named by him, be present to inform him of the nature of such warrant." (1 Cowp. 281.

In the 4th year of George II. the same court adopted the following general rule:

" The court taking notice of great inconveniences following from holding a warrant to confess judgment by one in custody, to be good if any attorney (though for the opposite-party) was present, made a rule that for the future there should be an attorney present on behalf of the Defendant."

The Court of King's Bench have held that the above rules do not extend to persons in custody in execution. (1 T. R. 715; 7 T. R. 19; Cowp. 281; 2 Str. 1245.)

Nor to warrants of attorney given for any other cause of action than that for which the Defendant is in custody; (3 Burr. 1792; 2 Ld. Raym. 797; 1 East. 241; 8 Taunt. 233) and consequently that the rule does not extend to a person in custody on criminal process; (4 T. R. 433.)

Independently of the above positive rules, which have been, to the regret of learned·judges, very much frittered away by the process of construction, (1 East. 241; 7 T. R. 8) there is no doubt that the courts of common law in England and this state, possess and have exercised general equitable powers over judgments entered upon bond and warrant of attorney, and will set them aside whenever the warrant of attorney has been obtained by fraud or duress, or are against public policy.

In Richmond v. Roberts, (7 Johns. 319) the jailor took the bond and warrant of attorney for the amount of a ca. sa. ads. of the Plaintiff and $10 in addition, upon which the judgment was afterwards entered, the court set aside the judgment on the ground that the practice, if tolerated, would lead to abuse, &c., and left the Plaintiff to his action on the bond. That was a case of a Defendant in custody in execution, and so not within the rule of the King's Bench according to the constructions which had been given to it.

The case of Evans v. Beeden (2 Wend. 243) was probably decided under the rule of the King's Bench; no other facts are stated than that the papers were executed by the Defendant while in close custody and no attorney attending on his part at their execution.

In the case now before me, if it appeared clearly that the Defendant was fairly indebted to the Plaintiffs in the sum for which the judgment was confessed, I should hesitate about interfering with it.

But there was no liquidation of accounts and the only evidence of any indebtedness on the part of the Defendant, was his confession under the circumstances mentioned, that he had purloined goods from the Plaintiffs' store at various times; and upon being inquired of by one

of the Plaintiffs as to their value, replied that they would probably amount to $200, and possibly to $300. And the judgment was confessed for $300.

I think there can be no doubt of the Defendant being at the time under the influence of fear, or hope of favor. Certainly no prudent attorney would have advised him to confess a judgment for this amount, under such circumstances. And I think it would be establishing a dangerous precedent to allow the judgment to stand. This judgment, if set aside, will of course be no bar to an action upon the bond, where its validity may be fairly tested; and I think it will be most prudent to leave the Plaintiffs to that remedy.

The judgment is therefore set aside with $10 costs.